**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JOHN BOYD LAWRENCE,**

      **Plaintiff,**

**v.**                              **Case No. 3:18-cv-01356**

**HUNTINGTON POLICE DEPARTMENT;
CABELL COUNTY PROSECUTING
ATTORNEY OFFICE; DET. JASON
DAVIS; and PROSECUTOR JOE FINCHAM,**

      **Defendants.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

On October 15, 2018, Plaintiff John Boyd Lawrence ("Lawrence"), proceeding *pro se* and incarcerated at the Western Regional Jail in Barboursville, West Virginia, filed a complaint under 42 U.S.C. § 1983, making various allegations against the defendants related to Lawrence's indictment and prosecution for embezzlement and grand larceny in Cabell County, West Virginia. (ECF No. 2 at 4-6). Lawrence requested reimbursement of "the loss of funds caused by the damage done by the Defendants listed at a sum of $67,000 as well as injunctive relief by a stoppage of the prosecution of the Plaintiff. The Plaintiff would also ask the court to place a value on the pain and suffering caused by the actions of the Defendants." (*Id.* at 5).

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of

1

fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). Currently pending is the Motion to Dismiss of Defendants Huntington Police Department and Detective Jason Davis. (ECF No. 14). In addition, Defendants Cabell County Prosecuting Attorney's Office and Prosecutor Joe Fincham ask the Court in their Answer to dismiss the Complaint for failure to state a claim. (ECF No. 19 at 1). By Order entered December 12, 2018, Plaintiff was given through and including January 9, 2019 to file a response in opposition to the Motion to Dismiss, (ECF No. 21); however, the Order was returned on December 18, 2018 as undeliverable. (ECF No. 23). According to a hand-written note on the accompanying envelope, Lawrence no longer was incarcerated at the Western Regional Jail. (*Id.*). Lawrence has made no effort to update the Clerk of Court of his residence address since his release from custody; therefore, his current contact information is unknown.

For the reasons that follow, the undersigned **RECOMMENDS** that the Motion to Dismiss of Defendants Huntington Police Department and Detective Jason Davis be **GRANTED**; the request for dismissal of Complaint by Defendants Cabell County Prosecuting Attorney's Office and Prosecutor Joe Fincham should also be **GRANTED**; and this action be **DISMISSED**, without prejudice, and **REMOVED** from the docket of the Court.

## I.   <u>Complaint</u>

Lawrence alleges that between January 12, 2016 and October 1, 2018, Detective Jason Davis ("Davis"), an employee of the Huntington, West Virginia Police Department ("HPD"), undertook an investigation of Lawrence presumably on potential charges of embezzlement and larceny. (ECF No. 2 at 6). Lawrence contends that the HPD should not have allowed Davis to conduct the investigation, because he had a conflict of interest.

2

Lawrence does not specify the precise nature of the conflict, but states that it arose out of "complaints filed against the Det. Jason Davis over prior relationships with Det. Jason Davis and his mother of his child." (*Id.*).

According to Lawrence, on or about June 2, 2017, the HPD and Davis deliberately "ignored evidence" in an effort to prosecute Lawrence and "sway the odds of guilt. " (*Id.* at 5). Davis purportedly charged Lawrence with embezzlement and larceny involving Aaron's Rent-A-Center in Huntington and sent the charges to the Cabell County Prosecutor's Office ("CCPO") in January 2018, where they were reviewed and filed. (ECF No. 2 at 4). Lawrence claims that the CCPO likewise intentionally ignored the evidence, misled a Grand Jury, and conspired with a law enforcement officer to pursue charges against Lawrence. (*Id.* at 4-5). Lawrence asserts that on August 20, 2018, Prosecutor Joe Fincham ("Fincham") and the CCPO committed the act of "prosecutorial misconduct" by purposefully presenting incorrect information to the Cabell County Grand Jury in order obtain an indictment against Lawrence. (*Id.* at 6) He adds that Fincham and the CCPO compounded their negligence and misconduct on September 15, 2018 by speaking with Scott Maddox, an attorney representing Lawrence's ex-wife. (*Id.*).

## II.    <u>Motion to Dismiss</u>

In their Memorandum in Support of the Motion to Dismiss, the HPD and Davis assert four grounds for dismissal. (ECF No. 15 at 1). First, the defendants claim that Lawrence failed to properly serve them with the summons and complaint; accordingly, the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (*Id.* at 3). Second, the HPD and Davis argue that the Court lacks subject matter jurisdiction, requiring dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(1). The defendants point out that there are two

types of cases over which this Court exerts subject matter jurisdiction: those involving diversity of citizenship and those involving a federal question. Defendants indicate that Lawrence fails to demonstrate complete diversity of citizenship given that he resides in West Virginia and at least one of the defendants, the HPD, is also a West Virginia resident. (*Id.* at 5-6). Furthermore, Defendants argue that Lawrence raises no question of federal law, as his complaint focuses primarily on prosecutorial misconduct, which is a matter of state law. (*Id.* at 6-7). Defendants contend that in the absence of subject matter jurisdiction, the Court must summarily dismiss the complaint.

Under Federal Rule of Civil Procedure 12(b)(6), Defendants assert that the complaint should be dismissed for failure to state a plausible claim. (ECF No. 15 at 8-13). Relying on *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), Defendants describe Lawrence's complaint as lacking in fact and mostly conclusory, void of allegations raising a right to relief above the speculative level. Defendants suggest that even if all of Lawrence's allegations are accepted as true, his complaint fails to state a compensable claim. In addition, Defendants allege their entitlement to immunity from litigation under both state statutory law and federal principles of qualified immunity.

Lastly, Defendants Fincham and the CCPO also seek dismissal for failure to state a claim, although they do not elucidate the grounds supporting their request. (ECF No. 19 at 1). Regardless, under the provisions of 28 U.S.C. §§ 1915, 1915A, the undersigned must consider whether any part of the Complaint against any of the defendants is frivolous, malicious, or seeks monetary relief from a defendant who is immune from such relief. Therefore, the complaint will be examined from these perspectives, as well.

### III.   **Standards of Review**

As stated, Defendants Davis and the HPD seek dismissal under Federal Rules of


Civil Procedure 12(b)(1) and 12(b)(2), and all of the defendants seek dismissal under Rule 12(b)(6). Furthermore, the standard of review under 28 U.S.C. §§ 1915, 1915A applies to the screening of the complaint.

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the case. A Rule 12(b)(1) motion may be presented in one of two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true; in other words, a "factual attack." *Johnson v. West Virginia Divison of Rehab. Servs.*, No. CV 3:16-9308, 2017 WL 1395501, at *2 (S.D.W. Va. Apr. 17, 2017) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986)). In that circumstance, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)).

Alternatively, the movant may contend, as Defendants Davis and the HPD do here, that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based", also called a "facial attack." *Johnson* 2017 WL 1395501, at *2. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina,* 905 F. Supp. 2d 712, 719 (W.D.N.C. Oct. 17, 2012). The court should grant dismissal when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Adams,* 697 F.2d at 1219). Subject matter jurisdiction should

be confirmed before proceeding with a case, and the case should be dismissed whenever subject matter jurisdiction is lacking.

### B.  Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may seek dismissal of an action on the basis that the court lacks personal jurisdiction over the defendant. "[T]he plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)). In general, to establish personal jurisdiction, the plaintiff must properly serve a summons on, or file a waiver of service returned by, a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In deciding a motion under Rule 12(b)(2), the court may conduct an evidentiary hearing to resolve disputed facts, or may decide the matter based on the pleadings, motion papers, and supporting memoranda. *Combs,* 886 F.2d at 676. If the latter option is used, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* The plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

### C. Rule 12(b)(6)

Rule 12(b)(6) permits the court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."

*Twombly,* 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court of the United States ("Supreme Court") further explained the "plausibility" standard in *Iqbal*, *supra,* stating:

> The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief."

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2d Cir. 2007)).

As stated, in deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). Nonetheless, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint.).

Courts are required to liberally construe *pro se* complaints, such as the one filed

in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

### D.  28 U.S.C. §§ 1915, 1915A(a)

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). Further, under 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e). A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Likewise, a complaint fails to state

8

a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## IV.   Discussion

### A.  Subject Matter Jurisdiction

The HPD and Davis argue that this Court lacks subject matter jurisdiction, because there is not complete diversity of citizenship between Lawrence and the defendants, and there is no federal question that would trigger federal jurisdiction. Davis and the HPD are correct that Lawrence fails to allege facts sufficient to support subject matter jurisdiction on the basis of diversity of citizenship. To the contrary, at the time the complaint was filed, Lawrence alleged that he was an inmate at the Western Regional Jail in Barboursville, West Virginia. The HPD is an agency of the City of Huntington, which is located within the borders of the State of West Virginia. Consequently, the complete diversity of citizenship required to maintain subject matter jurisdiction on that ground does not exist. *See* 28 U.S.C. § 1332; *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 433 (4th Cir. 2014) ("And of course under § 1332 that diversity must be complete 'such that the state of citizenship of each plaintiff must be different from that of each defendant.'") (quoting *Athena Automotive, Inc. v. DiGregorio,* 166 F.3d 288, 290 (4th Cir. 1999)).

Nevertheless, Lawrence does include enough facts in the complaint to state the foundation of a cause of action under 42 U.S.C. § 1983, which would fall within the subject matter jurisdiction of the District Court. Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under

color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). Here, Lawrence claims that he was charged with crimes that he did not commit, which were forwarded to the CCPO by Davis, who was acting in his capacity as a detective for the HPD; that Lawrence was incarcerated as a result of the manufactured charges and lost his job; and that Davis conspired with Fincham to obtain an indictment and pursue the wrongful prosecution of Lawrence. Claims of malicious prosecution by state actors may be brought under § 1983, as they implicate the Fourth Amendment to the United States Constitution. *Evans v. Chalmers,* 703 F.3d 636, 647 (4th Cir. 2012) ("A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.")

Therefore, the undersigned **FINDS** that subject matter jurisdiction does exist in this Court, because Lawrence asserts constitutional violations under the Fourth Amendment to the United States Constitution. In other words, jurisdiction is proper as the complaint raises questions of federal law.

### B. Personal Jurisdiction Over the HPD and Davis

Defendants Davis and the HPD contend that this Court lacks personal jurisdiction over them, because they were not properly served with process under Rule 4 of the Federal Rules of Civil Procedure. The United States Marshals Service was tasked with effecting service of process on Lawrence's behalf due to his *in forma pauperis* status. (ECF No. 4 at 2) (citing Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d)). Summonses

were properly issued by the Clerk of Court, and the Marshals Service delivered the summons and complaint directed to the HPD to Assistant Court Clerk Carol Nance on November 21, 2018 at 10:15 a.m. Service on Davis was effected in the same manner—by delivering his summons and complaint to Ms. Nance. (ECF Nos. 11, 12). Defendants argue that Ms. Nance is neither  their designated agent for service, nor a proper individual to receive service on their behalf; thus, serving Ms. Nance with process did not comply with Rule 4.

Fed. R. Civ. P. 4(e) states that an individual like Davis may be served in accordance with governing state law, by delivering the summons and complaint to the individual personally, by leaving the documents at the individual's home with a person of suitable age and discretion, or by delivering the documents to the designated agent authorized to receive service of process for the individual. Fed. R. Civ. P. 4(e). Service may also be effected by sending the individual a waiver of service under Rule 4(d) and receiving a return of the waiver from the individual accepting service. Fed. R. Civ. P. 4(d). West Virginia Rule of Civil Procedure 4(d)(1) generally allows service on an individual in the same manner as the federal rule, although it also allows service through certified mail sent by the clerk, return receipt requested and delivery restricted to the addressee. W. Va. R. Civ. P. 4(d)(1)(D).

In the case of a municipal agency, such as the HPD, service may be effected under Fed. R. Civ. P. 4 by delivering a copy of the summons and complaint to its chief executive officer, or by following the state rules on serving process on a like defendant. Fed. R. Civ. P. 4(j)(2). West Virginia Rule of Civil Procedure 4(d)(6)(A) provides that service on a city, town, or village can be completed in the same manner as serving an individual, except the person to be served on behalf of the city, town, or village should be its mayor,

city manager, recorder, clerk, treasurer, or any member of its council or board of commissioners. W. Va. R. Civ. P. 4(d)(6)(A).

Based upon a review of the applicable rules, and noting that the U.S. Marshal's Service did not comply with the rules in the case of either defendant, the undersigned **FINDS** that neither Davis, nor the HPD, were properly served with process. Nevertheless, "courts will generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process," before dismissing a complaint. *Thomas v. Nelms*, No. 1:09–CV–491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013). The tendency toward leniency is particularly strong in cases where the defendant has either received actual notice of the pendency of the action, or is unable to demonstrate any prejudice from a delay in service. *Karlsson v. Rabinowitz*, 318 F.2d 666, 688–69 (4th Cir. 1963). Moreover, when service of process is effected by the United States Marshals Service under Fed. R. Civ. P. 4(c)(3), and the Marshals Service fails to properly serve the defendant, the *pro se* plaintiff may have good cause to excuse a delay or failure of service. *See, e.g. Greene v. Holloway*, 210 F.3d 361, at *1 (4th Cir. 2000) (unpublished) (holding that "if an incarcerated plaintiff proceeding in forma pauperis provides the Marshals Service sufficient information to identify the defendant, the Marshals Service's failure to complete service will constitute good cause under Fed. R. Civ. P. 4(m) if the defendant could have been located with reasonable effort."); *Swanson v. Gaston Cty. Sheriff's Dep't*, No. 3:18-CV-86-FDW, 2019 WL 236730, at *3 (W.D.N.C. Jan. 15, 2019) ("The Court will not penalize Plaintiff for having relied on the Clerk of Court and the U.S. Marshals Service to effect service of process on his behalf.") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010)). Accordingly, the undersigned further **FINDS** that rather than dismiss the complaint on this ground, the Court could allow Lawrence

12

additional time to remedy the defect and effect service of process by ordering the Marshals Service to complete service in accordance with the governing rules.

### C. Failure to State a Viable Claim

Although this Court has subject matter jurisdiction over Lawrence's claims, and the lack of personal jurisdiction could be remedied, the undersigned nonetheless **FINDS** that Lawrence's complaint should be dismissed as it fails to state viable claims.

### 1. Malicious Prosecution

To state a malicious prosecution claim under § 1983, a plaintiff must allege that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans,* 703 F.3d at 647; *see also Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012); *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) ("While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure") (internal citations omitted); *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (holding that a "malicious prosecution" claim under § 1983 is "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff"). According to the docket sheet for Case No. CK-6-2018-F-307, *State of West Virginia v. John Lawrence,* pending in the Circuit Court of Cabell County, West Virginia, the criminal charges against Lawrence forming the basis of the instant civil action are still pending. Lawrence was released on bond on November 13, 2018 and has a status conference scheduled in his criminal case

on May 17, 2019. Given that the underlying criminal proceeding has **not** terminated in Lawrence's favor, he is precluded from bringing a § 1983 action for malicious prosecution. Therefore, the undersigned **FINDS** that Lawrence's complaint fails to state a claim for malicious prosecution.

### 2. Money Damages

Lawrence seeks compensatory damages for loss of liberty and lost wages as a result of his detention on allegedly manufactured charges of embezzlement and larceny. It is well established that a plaintiff in a successful malicious prosecution case may recover general damages, as well as "compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society." *Heck v. Humphrey* 512 U.S. 477, 484 (1994) (citations omitted). However, the Supreme Court's clearly held in *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated [by showing that it was] reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. Put simply, a claim for damages that implies the invalidity of a prisoner's conviction or sentence, which has *not* been so invalidated, is not cognizable

under § 1983. *Heck*'s holding precludes a prisoner from instituting a collateral attack that may result in two inconsistent results—for example, a valid criminal conviction and a valid civil judgment under § 1983 for monetary damages due to an unconstitutional conviction or imprisonment. *Wilson v. Johnson*, 535 F.3d 262, 265 (4th Cir. 2008).

Obviously, here, a judgment in Lawrence's favor would require a finding that his indictment and pending prosecution are unconstitutional, rendering any conviction resulting from that prosecution invalid. Such a finding would be premature. Consequently, the undersigned **FINDS** that without a prior termination of the criminal proceedings in Lawrence's favor, his claim for money damages is precluded. *Heck,* 512 U.S. at 486-87.

### 3. Injunctive Relief

As a general rule, a government "retains broad discretion as to whom to prosecute," *Wayte v. United States,* 470 U.S. 598, 607-08 (1982), and there is a "presumption of regularity behind a charging document." *Hartman v. Moore,* 547 U.S. 250, 265 (2006). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by the statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978). The principles of comity and federalism mandate that federal courts refrain from unduly interfering with a state's enforcement of its criminal statutes, even when those statutes are unconstitutional. *Wooley v. Maynard,* 430 U.S. 705, 712-13 (1997) ("[A] court will not enjoin the enforcement of a criminal statute even though unconstitutional since such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates concerns for federalism which lie at the heart of *Younger*."). These principles promote

respect for state functions and a "continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris,* 401 U.S. 37, 44 (1971).

Notwithstanding this general rule, federal courts have "limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution" ***and*** when circumstances make preemptive federal intrusion necessary to ensure adequate protection of federal constitutional rights. *Miller v. Mitchell,* 598 F.3d 139, 155 (3rd Cir. 2010) (citing *United States v. Santtini,* 963 F.2d 585, 596 (3rd Cir. 1992)). In the context of a **pending** criminal action, a federal court may enjoin the proceeding only "in certain exceptional circumstances—where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or ... other unusual circumstances that would call for equitable relief.'" *Mitchum v. Foster,* 407 U.S. 225, 230-31 (1972) (quoting *Younger,* 401 U.S. at 46) (internal page citations omitted). The doctrine of abstention set forth in *Younger* and its progeny admonishes federal courts to refrain from exercising equitable jurisdiction in pending state criminal proceedings even when a federal constitutional violation is raised, unless extraordinary circumstances exist to justify federal intervention. The Supreme Court explained that state courts should be free to determine matters of state law, vindicate important state interests, and address constitutional concerns without interference from federal courts except when an injunction was plainly necessary to address a situation of immediate and irreparable injury.

In this case, Lawrence has not demonstrated exceptional circumstances that would justify the federal court's intrusion into the state's criminal process. As the

defendants emphasize, Lawrence provides no facts in his complaint to establish a flagrant violation of constitutional rights by the defendants, nor does he demonstrate irreparable harm if this Court fails to intervene. Lawrence is currently released on bond, is represented by counsel, and will have the right to a jury trial, followed by appeals and collateral review if he is unsuccessful at trial. Consequently, the undersigned **FINDS** that Lawrence's constitutional rights are adequately protected by the state's criminal process, making injunctive relief in this Court inappropriate.

### 4. Absolute Prosecutorial Immunity

Assuming *arguendo* that Lawrence already had been convicted of embezzlement and his conviction had been overturned, his complaint against Defendant Fincham would still be subject to dismissal on the ground of absolute prosecutorial immunity. In *Imbler v. Pachtman*, the Supreme Court held that a prosecutor enjoys absolute immunity from suit for conduct "in initiating and in presenting the State's case." 424 U.S. 409, 431 (1976). The Supreme Court noted:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Imbler*, 424 U.S. at 424-25. Although the Supreme Court declined in *Imbler* to delineate the specific prosecutorial functions that give rise to the protection of absolute immunity, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has repeatedly held that a prosecutor is entitled to absolute immunity for claims that rest on his decisions regarding "whether and when to prosecute." *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir. 1996) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Ehrlich v. Giuliani,*

910 F.2d 1220 (4th Cir. 1990). Absolute immunity is afforded to prosecutors whenever they act "within the advocate's role." *Buckley v. Fitzsimmons,* 509 U.S. 259, 278 (1993).

In the present action, Lawrence claims that Fincham conspired with Davis to bring manufactured charges against him. However, Lawrence provides no facts in his complaint to support that conclusory allegation. Lawrence concedes that Davis performed an investigation and took the results of the investigation to the CCPO, where they were reviewed. Charges were then submitted to a Grand Jury, and that body returned an indictment against Lawrence. Lawrence alleges that the Grand Jury was "misled," but once again, he provides no factual basis for that conclusory statement. Armed with an indictment founded on probable cause, Fincham has proceeded to prosecute Lawrence. Prosecutors are immunized from liability for conduct "which is intimately associated with the judicial phase of the criminal process." *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997) (quoting *Imbler,* 424 U.S. at 430). The decision to pursue charges against a defendant is conduct that is intimately associated with the judicial phase of the criminal process as it goes to the core of a prosecutor's duties. Lawrence does not argue that Fincham's actions fell outside of his traditional prosecutorial duties, nor does Lawrence recount a single factual scenario that suggests that Fincham overreached those duties. In the absence of such facts, the undersigned **FINDS** that Defendant Fincham should be dismissed from the complaint pursuant to 28 U.S.C. §§ 1915, 1915A, as he is absolutely immune from litigation.

### 5. Respondeat Superior

Again assuming that Lawrence had been convicted, and his conviction had been overturned, his § 1983 complaint against the HPD and the CCPO would still be subject to dismissal. A municipality is not liable for constitutional deprivations under § 1983

18

based on the doctrine of *respondeat superior. Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor ... a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.") (emphasis in original). *See also Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1994) (municipalities are not liable under *respondeat superior* principles simply because of the employment relationship); *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) (holding that the doctrine of *respondeat superior* has no application under § 1983). A municipality may be liable under § 1983 where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); however, a municipality is not liable for mere "isolated incidents of unconstitutional conduct by subordinate employees. ... Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

Lawrence does not include any allegations in the complaint that state claims against the HPD and CCPO apart from their roles as the employers of Davis and Fincham, respectively. Lawrence claims that the HPD should not have allowed Davis to investigate Lawrence for embezzlement and grand larceny, because of Davis's conflict of interest, but Lawrence does not indicate that the HPD was aware of the alleged conflict or sanctioned the investigation with knowledge of a bias. Other than that allegation, Lawrence makes no distinction between the actions of Davis and the actions of the HPD. Similarly, in the case of the CCPO, Lawrence includes no allegations in the complaint of

19

constitutional violations by the CCPO that are discrete from the alleged violations of Fincham. Moreover, Lawrence does not claim that any custom or practice of these agencies was unconstitutional, or that the agencies promulgated or sanctioned illegal policies. In view of the lack of allegations demonstrating claims against the HPD and CCPO separate from their role as employers, the undersigned **FINDS** that the complaint should be dismissed against the HPD and CCPO for failure to state a claim under 42 U.S.C. § 1983.

## V.    <u>**Proposal and Recommendation**</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that the Motion to Dismiss of Defendants Huntington Police Department and Detective Jason Davis, (**ECF No. 14**), be **GRANTED**; the request for dismissal of Complaint by Defendants Cabell County Prosecuting Attorney's Office and Prosecutor Joe Fincham should also be **GRANTED**; and this action be **DISMISSED**, without prejudice, and **REMOVED** from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding

District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** April 23, 2019

Cheryl A. Eifert
United States Magistrate Judge